GEORGE S. MAWHINNEY, Appellant, v. MILLBROOK WOOLEN MILLS, INC., Respondent.

**Contract — manufacture and sale of goods — rescission — damages — waiver — failure to perform — extension of time — respective rights of buyer and seller — letters merely requesting speedy delivery of merchandise due and advice as to delivery do not affect right to damages for delay or failure to perform — whether seller was necessarily and wholly prevented from performing any part of contract by priority required in performance of government contracts a question of fact.**

1. Where a contract for the manufacture and sale of goods provides for delivery on a time fixed in the contract for the full completion thereof, and the seller fails to perform by the day so fixed,

the buyer may insist on his strict legal right and put an end to the contract. If he extends the time fixed for performance for an indefinite period, the buyer may not put an end to the contract on account of delay without giving notice to the seller that in default of performance within a reasonable time, to be specified in the notice, the contract will be abrogated. If the buyer, after the time fixed for performance, accepts the goods and the seller fully performs, except as to time, the delay is no defense to an action for the agreed price. The purchaser may, however, maintain an independent action against the vendor for damages for the delay.

2. Letters by the buyer which were mere requests to rush the balance of merchandise due, to advise when delivery would be made and to give information in regard to delivery, indicate no intention to rescind the contract for delay but plainly indicate an intention to enforce the contract and to demand delivery of the goods contracted for and do not in law amount to an intentional relinquishment of a known right to recover damages for defendant's delay or failure to perform the contract.

3. Where, in an action to recover for a breach of contract for the manufacture and sale of goods, it appears that defendant was in default on July 31, 1917, but that its time for performance was extended by plaintiff to a reasonable time after October 17, 1917, that the defendant had secured certain government contracts in May and July of that year which to some extent delayed or prevented the execution of plaintiff's contract because they were given preference in execution, and that on November 24, 1917, defendant's material and mill were formally requisitioned by the government, it may not be said as matter of law that delay and failure to perform any part of the contract up to November 24, 1917, were justified. Whether the necessary delay necessarily and wholly prevented performance prior to that date remains as a question of fact for the determination of a jury. (*Taylor* v. *Goelet*, 208 N. Y. 253, distinguished; *Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290, explained.)

*Mawhinney* v. *Millbrook Woolen Mills*, 201 App. Div. 589, reversed.

(Argued October 18, 1922; decided November 21, 1922.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 15, 1922, affirming a judgment in favor of defendant entered upon a verdict directed by the court.

*Thomas G. Prioleau* for appellant. The trial court erred in refusing plaintiff's request for the submission

of the issues to the jury and in directing a verdict for defendant. (*Koehler* v. *N. Y. Steam Co.*, 183 N. Y. 1; *Waldron* v. *Fargo*, 170 N. Y. 130; *Saranac & Lake Placid R. Co.* v. *Arnold*, 167 N. Y. 368; *Wilcox* v. *American T. & T. Co.*, 176 N. Y. 115; *Vogel* v. *Pyne*, 197 App. Div. 633; *Sundheimer* v. *City of New York*, 176 N. Y. 495; *Getty* v. *Williams Silver Co.*, 221 N. Y. 34; *Rosenberg Bros. & Co.* v. *Buffum & Co.*, 199 App. Div. 482.)

*Roderic Wellman* and *Francis L. Wellman* for respondent. There was no such conflict in the testimony as would require a submission of issues to the jury. (*Hull* v. *Littauer*, 162 N. Y. 569; *Taylor* v. *Goelet*, 208 N. Y. 253.)

POUND, J. The case comes up on appeal after a second trial of the action granted by this court. (231 N. Y. 290.) The action is to recover damages for breach of contract to manufacture and sell certain woolens. The contract was dated February 9, 1917. The subject-matter of the contract was one hundred pieces of woolens. The agreed price was $1.75 a yard. Deliveries were to be made during the months of May, June and July in the year 1917. Defendant delivered only ten pieces for which plaintiff paid.

The question before this court on the former appeal was as to the sufficiency of certain defenses based on the precedence of certain government contracts made after the date of the contract in suit. It had been held below that, although under government orders and contracts, beginning May 11, 1917, defendant's looms had been utilized and performance of plaintiff's contract had been thereby delayed, the character of the government contracts differed not from ordinary civil contracts and that until November 24, 1917, when a formal order was made under the provisions of the National Defense Act, the contracts and the acts of the government officials in

demanding performance of such contracts constituted no defense for failure to perform plaintiff's contract. The documentary and other evidence of such contracts is set forth in the opinion, to which reference is hereby made.

This court, however, held that: During the emergency of the war with Germany, when the government made contracts for uniform cloth, and requested through its proper army officers that delivery be made as speedily as possible and that precedence be given over all civilian business, such orders came within the spirit and meaning of the National Defense Act, section 120 (U. S. Comp. St. § 3115g), making compliance with all such precedence orders obligatory on a contractor with the government, so that the contractor to furnish uniform cloth who complied with the orders and neglected civilian business is not liable for breach of contract to civilian customers.

It also held that: "The undisputed facts in this case show that the government made contracts for woolens with the defendant which required the use of its looms and materials and preference in the execution of the work. This preference was necessitated within the meaning and purpose of the above act of Congress and constituted a good defense for the delay or cancellation of the plaintiff's contracts." (p. 300.)

The court did not hold, nor was it necessary for its decision to hold, that the undisputed facts showed that the work on the government contracts actually did, wholly delay or prevent further performance of plaintiff's contract prior to and until November 24, 1917, when the government requisitioned all cloth in defendant's possession and in process of manufacture and required defendant to utilize all its machinery exclusively for the performance of the government contracts.

On the second trial judgment in favor of the defendant was directed by the court. The Appellate Division, by a divided court, affirmed the judgment of the court below saying that: "The Court of Appeals has laid down the

law of this case to the effect that the government contracts, beginning with the one of May 11th, 1917, took precedence of civilian contracts, and, in so far as they prevented performance of plaintiff's contract, constituted a good defense for the delay or cancellation of it.    Time was of the essence of the contract between plaintiff and defendant.    The defendant contracted to deliver the goods in May, June and July.    Whether the government contracts of May 11th and July 22d, taking precedence of plaintiff's contract, caused delay or prevented performance of it in whole or in part, would have been a question of fact on the evidence.    But plaintiff waived the time of performance by letters of August 24, October 4 and October 17, 1917.    The defendant, therefore, had a reasonable time after October 17 to deliver the goods, and such time was never fixed by notice under the doctrine of *Taylor* v. *Goelet* (208 N. Y. 253), but was left indefinite.    Meanwhile still another government contract was made on August 25, and the evidence warranted the court in holding as matter of law that performance of plaintiff's contract was then rendered impossible by the government contracts with the effect given them by the National Defense Act (39 Stat. 213) as interpreted by the Court of Appeals."    (201 App. Div. 589.)

The letters of August 24, October 4 and October 17, 1917, above referred to, are mere requests to rush balance of overcoatings due, to advise when delivery will be made and to give information in regard to delivery.    Far from indicating an intention to rescind the plaintiff's contract for delay, they plainly indicate an intention to enforce the contract and to demand delivery of the goods contracted for.    Defendant did not formally rescind the contract until December 1, 1917, when it notified plaintiff that the United States government had commandeered all material to the exclusion of private orders.

*Taylor* v. *Goelet* (*supra*) held merely (p. 258) that: " Where an executory contract fixes the time within

which it is to be performed and performance within that time is waived by the parties to the agreement, neither party can thereafter rescind the contract on account of such delay without notice to the other requiring performance within a reasonable time, to be specified in the notice, or the contract will be abrogated. By the waiver time as an essential element of the contract has been removed therefrom, but it can be restored by a reasonable notice demanding performance and stating that the contract will be rescinded if the notice is not complied with."

But that is not this case. The rules governing this case are elementary and may be stated as follows: Where a contract for the manufacture and sale of goods provides for delivery on a time fixed in the contract for the full completion thereof, and the seller fails to perform by the day so fixed, the buyer may insist on his strict legal right and put an end to the contract.

If he extends the time fixed for performance for an indefinite period, the buyer may not put an end to the contract on account of delay without giving notice to the seller that in default of performance within a reasonable time, to be specified in the notice, the contract will be abrogated.

If the buyer, after the time fixed for performance, accepts the goods and the seller fully performs, except as to time, the delay is no defense to an action for the agreed price.

The purchaser may, however, maintain an independent action against the vendor for damages for the delay. (Personal Property Law [Cons. Laws, ch. 41], § 148; *Deeves & Son* v. *Manhattan Life Ins. Co.*, 195 N. Y. 324.)

Plaintiff's letters do not in law amount to an intentional relinquishment of a known right to recover damages for defendant's delay or failure to perform the contract. The plaintiff did not repudiate the contract, manifest his inability to perform his obligations thereunder or commit

any material breach thereof.  He did not thereby put the defendant in a position to rescind the contract, or (Personal Property Law, § 146) did he himself rescind. Defendant might at any reasonable time thereafter have delivered the goods, had it been able and willing to do so, and recovered on the purchase price.

Defendant herein was in default on July 31, 1917.  Its time for performance was extended by plaintiff's letters to a reasonable time after October 17, 1917.  The defendant's material and mill were not formally requisitioned by the government until November 24, 1917.  While further deliveries on private contracts were then stopped and performance was then as matter of law rendered impossible, delay and failure to perform any part of the contract up that date might or might not have been justified by the priority given to the government contracts. It may not be said as matter of law that it was justified. Defendant secured contracts from the government to the amount of $5,195,000.  The plaintiff's order amounted to $8,750.  Defendant made no claim that it could not perform by reason of such contracts until December. Defendant's treasurer as late as August 25, 1917, wrote plaintiff in substance that, while the major part of the mill was devoted to filling the large government order, some deliveries to regular customers were being made right along.  The testimony of Kaplan, defendant's treasurer, undoubtedly, as this court said on the former appeal, shows without dispute that the government contracts to some extent delayed or prevented the execution of plaintiff's contract because they were given preference in the execution of the work.  Whether the necessary delay necessarily and wholly prevented performance prior to November 24, 1917, remains as a question of fact for the determination of a jury.  What was said on the former appeal on the " narrow question " whether a question of law was presented to this court for review and the further narrow question as to the sufficiency of the defenses

pleaded was not intended to be controlling on the trial court in its determination of the facts. Conceding that the government created a situation which pushed the plaintiff temporarily aside, it does not follow that defendant could ignore plaintiff's rights entirely. It was bound to do the best it could for him under the circumstances. Plaintiff showed no disposition to take advantage of the situation or to enforce the contract to the letter when the time fixed had passed. He is entitled to fair treatment. With all the indulgence conceded to the manufacturer by this court in its former decision, no intimation was given that it might unnecessarily ignore the claims of its private customers prior to November 24, 1917.

The judgments appealed from should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., HOGAN, CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.