REMINGTON ARMS UNION METALLIC CARTRIDGE COMPANY, INC. *vs.* THE GAYNOR MANUFACTURING COMPANY.

Third Judicial District, New Haven, January Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and WOLFE, Js.

A contract prescribing a special remedy for its breach, does not necessarily exclude the remedy in damages given by the law. The question is one of intent, to be gathered from the contract.

The defendant agreed to manufacture fifty million copper bullets for the plaintiff, guaranteeing delivery of two hundred thousand per day or one million two hundred thousand per week, and in case of its inability to make these deliveries, the plaintiff had the option of manufacturing the bullets in the defendant's factory, or with the defendant's machinery in the plaintiff's factory. *Held* that the plaintiff was not confined to the special remedy prescribed in the contract, and might have pursued any available legal remedy for the defendant's breach; but that upon any construction of the contract, the plaintiff at least had the right, for good cause, to terminate its further performance, and—waiving any remedy for

the defendant's breach which the contract afforded—to sue for the recovery of money and material advanced by it to the defendant to enable the latter to carry out its undertaking; which was in fact the cause of action alleged in the complaint.

One who does not for a time insist upon a strict observance of the terms of the contract, does not thereby lose his right to such compliance; but in that situation he cannot peremptorily cancel the contract for noncompliance with its terms, without first giving reasonable notice of his intention to require strict performance in the future, and an opportunity to comply therewith.

An executory contract cannot be terminated at the will of one of the parties. The other party may keep the contract open by insisting on his right to performance, provided he himself has performed or is ready and able to perform his own obligations. But if, as in this case, he is unable to perform, or if, as in this case, he elects to treat the contract as wrongfully terminated, he cannot in equity and good conscience retain money which has been advanced to him by the other party to assist him in carrying out the contract, except in so far as may be necessary to satisfy a claim for damages for the wrongful termination.

In the present case the plaintiff, having accepted delayed and insufficient deliveries, peremptorily terminated the contract without notice of its intention to insist on strict performance, and then sued to recover the advances made. The defendant denied any right of recovery, and also counterclaimed for damages for wrongful termination of the contract. *Held:—*

1. That the plaintiff's termination of the contract, under the circumstances, was wrongful, but that the defendant could not recover damages therefor, in the absence of an allegation and of proof of its readiness and ability to perform the balance of the contract, which the trial court found the defendant could not have done when the attempted cancellation occurred or within a reasonable time thereafter.

2. That the plaintiff could recover the advances which it had made, as money to which it was in equity and good conscience entitled.

Money paid upon a contract which is subsequently rescinded, is never forfeited, unless there is an express or implied contract to that effect.

The defendant sought to have the finding, respecting its inability to perform the contract, corrected. *Held* that there was ample evidence to warrant the finding as made; and that upon the case disclosed by the record, the printing of the entire evidence was wholly unjustified.

Argued January 23d—decided April 4th, 1923.

ACTION to recover moneys advanced to the defendant, and the value of materials furnished to it, to en-

able it to make and deliver war material, brought to the Superior Court in Fairfield County where a demurrer to the first and third counts of the amended complaint was overruled (*Keeler, J.*) and the cause was afterward tried to the court, *Banks, J.;* facts found and judgment rendered for the plaintiff for $44,416, and appeal by the defendant. *No error.*

On March 1st, 1915, the parties entered into a contract evidenced by a written order by the plaintiff, accepted by the defendant, for the manufacture by the defendant of fifty million copper bullets, to pass the inspection and approval of the French government inspector. The portions of the contract material to this action, are as follows: "You guarantee delivery of 200,000 per day, or 1,200,000 per week, beginning May 25th, and to continue at that rate until this entire order is completed. We will advance to you, when you receive the machinery for making these bullets, and hand us a lien on same, the sum of $20,000, and this sum is to be considered as a loan only, and to be paid back to us by you, as follows: You to invoice these bullets to us at the contract price per M bullets, we to retain 40c per M bullets from this price, in paying such invoices; which will take up the entire amount of the loan at the completion of the contract. If for any reason, you are unable to make the deliveries named in the contract, and fall behind to the extent of 30 days, you will agree to permit us to take such steps as we may deem necessary under the circumstances to carry out this contract, either shipping the machinery to our factory, or taking over the manufacture of these bullets in your factory. If such a contingency arises, we are not to assume liability beyond the price which we agree to pay for these bullets; you to assume all loss beyond this price, including the cost of the machinery," etc.

The complaint is in four counts. After incorporating the contract by reference, the first count alleges that the plaintiff loaned the defendant $20,000 in accordance with its terms; that between July 23d, 1915, and August 8th, 1916, the defendant delivered 2,819,260 bullets; that on August 8th, 1916, the plaintiff canceled the unfilled part of the order on account of the failure of the defendant to make deliveries in accordance with the contract; that the defendant has paid back, on account of the loan of $20,000, only $1,154.07, and the balance of $18,845.05 is due and owing to the plaintiff, but the defendant refuses to pay the same on demand.

The second count is to recover the reasonable value of copper furnished to the defendant at its request, to assist it in carrying out the contract, and not returned nor paid for.

The third count is to recover overpayments made to the defendant for bullets which were afterward properly rejected, together with incidental labor and materials.

The fourth count is upon an account stated covering the entire transaction.

The defendant demurred to the first and third counts, on the ground that it appeared from the contract that the plaintiff had no right to cancel the contract on account of the defendant's failure to make deliveries as agreed; and also on the ground that by the terms of the contract the only remedy the plaintiff had for a breach of the defendant's agreement to make deliveries, was by taking over the manufacture of the bullets in the manner specified in the contract.

This demurrer was overruled, and the defendant answered the first count by partial denials, and by a second defense alleging that the plaintiff broke the contract by first waiving the stipulated rate of delivery and then directing the defendant to cease manufacturing, without giving the defendant reasonable notice that it in-

tended to exact a literal compliance with the contract rate of delivery. The second and third counts were answered by special denials and the fourth count by a general denial. The defendant also answered by way of counterclaim alleging a modification of the contract, a breach by the plaintiff, as set forth in the second defense to the first count, and claiming damages for its expenses in preparing to perform the contract, and for the deprivation of profits which it would have made if permitted to perform.

The trial court gave judgment for the plaintiff on the first, second and third counts of the complaint, and on the defendant's counterclaim, and for the defendant on the fourth count of the complaint.

The following facts found are not now in controversy. There were at least two methods of manufacturing the bullets in question: one known as the Waterbury method, and the other the Gaynor method, invented by one of the officers of the defendant company, of forming the bullets in dies under the hammer of a drop-press. At the time the contract was executed the Gaynor method was untried so far as quantity of production was concerned.

The defendant began making deliveries on June 9th, 1915, and continued to make deliveries in varying quantities and at irregular intervals until August 8th, 1916, when the plaintiff canceled its order so far as it remained unfilled. During that period of fourteen months, the total deliveries by the defendant slightly exceeded five million bullets, of which nearly one half were properly rejected as defective, leaving a net production and delivery of 2,819,260 bullets. At no time did the defendant attain the rate of delivery specified in the contract. The failure of the defendant to make deliveries in accordance with the contract was due to the fact that it could not make bullets in the required

quantities by its process and with the equipment which it had or could obtain. Neither the dies nor the hammers used in this drop-hammer process were adapted to do the work they were called upon to perform, could only be operated a small portion of the time, and were continually breaking down under the work. The defendant made and delivered bullets as fast as it could, but because of lack of skill or experience, or proper equipment, or lack of finances, it was not possible for it to make the deliveries required by the contract. The plaintiff was not responsible for the method used by the defendant in the manufacture of bullets.

The plaintiff protested at the failure of the defendant to make the deliveries called for by the contract, but it continued to accept deliveries of lesser amounts and at irregular intervals, and thereby assented, for the time being, to the nonperformance by the defendant of its agreement to deliver at the rate specified in the contract.

On August 8th, 1916, and without any preliminary notice of its intention to cancel, the plaintiff wrote a letter to the defendant, saying: "Please cancel the undelivered portion of our purchase order No. 14933-U, dated Mar. 1st, 1915. . . . Due to the delay in your delivering bullets to us our order for these cartridges has been cancelled. You will therefore immediately stop the manufacture of these bullets and we will send for all of the wire that you have of ours, and our auditors will check up accounts with you."

To this the defendant replied in part: "We received your cancellation of order 14933-U and request that you reconsider this decision as such a step at this time will absolutely ruin us. This job was an experiment and we insist that we had your sanction to go ahead with our ideas, the other methods being at that time more or less vague. That the experiment hasn't yet

turned out as we wished is lamentable, but absolutely not our fault. Maybe we tackled an impossibility. We've used every resource and even the ideas and work of your own force." The plaintiff replied that its decision was unalterable. Other facts deemed important to the determination of this appeal are stated in the opinion.

Defendant appeals from the refusal of the court to correct the finding, from the action of the court in overruling the demurrer to the first and third counts of the complaint, and from the judgment in favor of the plaintiff on the first, second and third counts of the complaint and on the defendant's counterclaim.

*Henry E. Shannon,* and *Frank A. Gaynor* of New York City, with whom was *Walter J. Walsh,* for the appellant (defendant).

*Homer S. Cummings* and *Raymond E. Hackett,* with whom, on the brief, was *Charles D. Lockwood,* for the appellee (plaintiff).

BEACH, J. Defendant in support of its motion to correct the finding has caused all the evidence to be printed, and in its assignments of error asks that paragraphs twenty, twenty-one, twenty-four, twenty-five, twenty-seven and twenty-eight be expunged; that some other paragraphs be amended by additions which would not materially affect their legal significance, and that twenty-seven paragraphs of its draft-finding, marked not proven, be added to the finding. None of these assignments of error are pursued on the brief except as to paragraph twenty-four. Paragraphs sixteen, seventeen and nineteen are attacked in the brief, but no foundation for doing so is laid in the assignments of error.

All of these four paragraphs deal with the defendant's failure to make deliveries as required by the contract, and paragraphs sixteen, seventeen and nineteen lead up to and support paragraph twenty-four, which finds that at the time the plaintiff canceled the contract, defendant was unable to perform the contract on its part, and would have been unable to perform within a reasonable time thereafter. This latter finding is objected to as a finding made without evidence; but the slightest examination of the record shows that there was abundant evidence to support it, such as the continued failure of the defendant to approximate the contract rate of delivery; the admitted fact that fourteen months of strenuous effort, assisted at times by the plaintiff, produced a total net delivery of less than six per cent of the bullets contracted for; the fact that nearly one half of the bullets tendered for delivery were defective; that the dies and hammers were continually breaking down; and, finally, the statements already quoted from the defendant's letter of protest against the final cancellation of the order.

As against this mass of evidence justifying, if not compelling, the inference that the defendant's new and theretofore untried method of manufacture was inherently impracticable, or at least that the defendant was incapable of perfecting it within a reasonable time after August 8th, 1916, we are referred to a single statement of one of the defendant's witnesses, "We had our difficulties practically ironed out about the time the cancellation came in";—a statement which, if well founded in fact, should have been made at the time of the cancellation, and which is quite inconsistent with the statements that were then made. On this state of the record and brief, the printing of the entire evidence was wholly unjustified. The requests for correction of the finding are denied.

The other reasons of appeal raise two distinct sets of issues, those relating to the action of the court in over-ruling the demurrer to the first and third counts of the complaint, and those relating to the judgment for the plaintiff on the first, second and third counts of the complaint and on the defendant's counterclaim.

The grounds of demurrer as pleaded, appear to be two in number: first, that it does not appear from the complaint and contract that the plaintiff had any right to cancel the unfilled portion of the order on account of the defendant's failure to make deliveries in accordance with the contract; and second, that by the terms of the contract the only remedy the plaintiff had for such a default by the defendant, was to take over the completion of the contract on the terms specified therein.

The second ground stated raises the question whether the provision giving the plaintiff, in case of defendant's default, the right to complete the contract at the defendant's expense, is a remedy concurrent with or exclusive of the remedy in damages given by law. The question is one of the intent of the parties to be gathered from the contract. The agreement for a special remedy does not necessarily exclude the remedy in damages. In *Shupe* v. *Collender*, 56 Conn. 489, 15 Atl. 405, we held that where an article was sold with a warranty, and with a provision that on a breach of the warranty the purchaser might return the article sold, the latter might elect to retain it and to recover damages for the breach. See also 13 Corpus Juris, 696, and the elaborate note to *Detwiler* v. *Downes*, 119 Minn. 44 (137 N. W. 422), in 50 L. R. A. (N. S.) 753.

In the present case there is nothing in the contract to indicate an intention to exclude the remedy in damages and confine the plaintiff, in case of a breach by the defendant, to the remedy by completion of the con-

tract at the defendant's risk. On the contrary, the words used indicate that the special remedy was optional and cumulative.

We need not pursue this branch of the discussion, for it is apparent that the second ground of demurrer does not touch the causes of action alleged in the first and third counts, because the plaintiff is not attempting to pursue its remedy in damages. The action is not grounded on the defendant's inability to make deliveries as required. True, that is alleged as the reason why the contract was terminated, but the reason is not important except so far as it was important for the plaintiff to allege that the contract was effectually, because lawfully, terminated. That having been sufficiently alleged, the plaintiff's cause of action, as stated in the complaint, is for money had and received and materials furnished for a special purpose which cannot now be carried out. What the plaintiff's remedy might be if another and different cause of action were alleged is immaterial.

It was apparently to meet this difficulty that the first ground of demurrer was stated in much broader terms: that the plaintiff had no right or authority to cancel the unfilled portion of the order in case of defendant's fault. Meaning that the plaintiff, in such case, must go forward and complete the contract at the defendant's risk whether it wanted to do so or not. That position is plainly untenable. Upon any construction of the contract, the plaintiff must at least have the right to put a stop to the further performance of the contract for good cause, upon the terms of waiving any remedy for the breach which the contract gives it. So far as this record discloses, that is what has been done. Similar provisions are commonly found in building contracts, but it has never been supposed that the owner might not, for good cause, eject the contractor and

leave the building unfinished, if he chose to take that course. The demurrer was rightly overruled.

Turning now to the assignments of error touching the judgment, most of them relate to the defendant's claim of law that the plaintiff having, for fourteen months, accepted deliveries at irregular intervals and at a rate less than the contract called for, had no right to peremptorily put an end to further performance by the defendant, on the ground of delayed deliveries, without first giving the defendant reasonable notice of its intention to demand a strict performance in the future. That is a sound proposition of law. In *Grippo* v. *Davis*, 92 Conn. 693, 104 Atl. 165, there were two contracts for the purchase of real estate, each of which provided for the payment of the contract price in weekly instalments, and for the execution of warranty deeds to the purchaser when the price was paid in full. Each provided that if the weekly payments were in default for a stated time, the seller might, at his option, either declare the entire balance of the contract price due and collectible, or might rescind the contract and take possession of the land at his option. Payments were in fact made and accepted in varying amounts and at irregular intervals, for the most part in monthly instalments of $10 each, and both contracts were long in default of their final payment under their terms when the purchaser, on February 1st, 1916, tendered a payment of $10, which the vendor refused to accept and orally notified the purchaser that she rescinded the contracts and offered to return the gross amount already paid. The purchaser declined this offer, and shortly afterward tendered the entire balance of the contract price under both contracts, and demanded a deed. This being refused, the purchaser brought an action for specific performance. We said: "While we are of the opinion that these payments constituted a

waiver of the provision for weekly payments so long as they continued, we do not think they abrogated this provision of the agreements and substituted the practice of payments for those provided. The defendant was at liberty at any time to insist on the resumption of this provision. Before she could do this she must in fairness give the plaintiff notice of her intention to so insist, and a reasonable opportunity to comply. 2 Black on Rescission & Cancellation, pp. 1395, 1396." The rule thus announced is fully supported by the authorities, although but few of the cases cited on the brief are directly in point. Among them are *Hartley* v. *Hymans*, L. R. (1920) 3 K. B. D. 475, in which the question is elaborately discussed. *Mawhinney* v. *Millbrook Woolen Mills, Inc.*, 234 N. Y. 244, 137 N. E. 318; *Tennessee Fertilizer Co.* v. *International Agr. Corp.* (Tenn. 1922), 243 S. W. Rep. 81; *Taylor* v. *Goelet*, 208 N. Y. 253, 101 N. E. 867. It is of no consequence that the plaintiff protested against the shortage and delay in deliveries. *Hartley* v. *Hymans, supra.*

We hold that the plaintiff had no right to peremptorily cancel the unfilled portion of the order on August 8th, 1916, without first giving reasonable notice of its intention to insist on strict performance. The defendant then had the right either to acquiesce in the wrongful termination of the contract, and sue for damages, or to continue to make deliveries as before, subject to the plaintiff's right after notice to require a resumption of deliveries at the contract rate within a reasonable time. It seems at first to have adopted the latter course, for it continued for a time to make deliveries of bullets which were properly rejected as defective; but subsequently ceased deliveries, and by its counterclaim demands damages for the wrongful termination of the contract by the plaintiff. Assuming that the defendant has a right to recover such damages as it can prove,

it must first allege and prove that it was ready and able to perform the contract according to its terms within a reasonable time after August 8th, 1916, for *Grippo* v. *Davis* and the other cases cited, hold that the original terms of delivery are not abrogated, but only suspended, by an acquiescence in short and delayed deliveries. In *Grippo* v. *Davis* the plaintiff succeeded because he demonstrated his ability to perform within a reasonable time, by tendering the contract price within such time. In *Hartley* v. *Hymans* the plaintiff recovered damages, because the court found that he was able to perform within a reasonable time. In this case the court has found that the defendant was unable to perform when the order was canceled and would have been unable to perform within a reasonable time thereafter. That being so, the defendant has suffered no recoverable damage from being wrongfully deprived of an opportunity to do that which it was unable to do. The judgment on the counterclaim is supported by the facts found, and is not erroneous.

The next question is whether the plaintiff, having prematurely, and therefore wrongfully, canceled the unfilled portion of the order, is entitled to recover back the unapplied balance of money and materials advanced to assist in the performance of the contract. If the defendant were insisting on its right to perform the contract and were ready, able and willing to fulfil its agreements according to the contract, or within a reasonable time, the plaintiff could not recover. *Hansbrough* v. *Peck*, 72 U. S. (5 Wall.) 497, 506. But the defendant was not able to perform, it has suffered no damage by the wrongful cancellation, it has definitely taken the position, by its counterclaim, that the contract has been terminated, and there is no provision in the contract for a forfeiture. Under these circumstances, the defendant has no legal or equitable right to

retain the unapplied balances of money and materials advanced by the plaintiff. Our rule on this subject was definitely laid down in *Pierce* v. *Staub*, 78 Conn. 459, 62 Atl. 760. In that case the buyer, under a contract for the sale of real and personal property, made some payments under the contract and then defaulted, whereupon the seller notified the buyer that unless payment in full were made on a date named, he would treat the property as divested of any interest which the buyer might have. He did so treat the property and sold it to a third person. The buyer died three months after the date named, without having made any further payments, and his administrator sued to recover back the money paid upon the contract. The objection was made that the buyer, being in default, his representative could not recover; and we said (pp. 464–467): "That rule is based upon the proposition that a party who advances money in part performance of a contract, and then stops short and refuses to go on, while the other remains ready and willing to perform, cannot recover back the money advanced. This proposition is supported by the following cases, and by many others which might be cited. . . . The decisions in these cases all proceed upon the assumption that the special contract, though broken by one of the parties, remains open and unrescinded; and the defendant's claim in the present case proceeds upon such an assumption; but we think that in this case the fact thus assumed is not true. We are of opinion that the parties in this case have, in effect, rescinded and put an end to the contracts. . . . In view of the conclusion reached, that the contracts were in effect rescinded, the right of the defendant to retain the money advanced cannot be sustained; and as he made no claim whatever for damages suffered by the default, the plaintiff, if entitled to recover anything, was entitled to recover all. 'Money

paid upon a contract which is subsequently rescinded is never forfeited unless there is an express or implied contract to that effect.' *Hickock* v. *Hoyt*, 33 Conn. 553, 559; and upon such rescission it must be returned to him who has advanced it. *Gay* v. *Alter*, 102 U. S. 79; *Frink* v. *Thomas*, 20 Ore. 265, 25 Pac. 717; *Wheeler* v. *Mather*, 56 Ill. 241; *Drew* v. *Pedlar*, 87 Cal. 443, 25 Pac. 749; *Merrill* v. *Merrill*, 103 Cal. 287, 35 Pac. 768, 37 id. 392; *Gilbreth* v. *Grewell*, 13 Ind. 484; *Glock* v. *Howard & W. C. Co.*, 123 Cal. 1, 55 Pac. 713."

This rule is manifestly just. An executory contract cannot be terminated at the will of one of the parties. The other party may keep the contract open by insisting on his right to performance, provided he himself has performed or is ready and able to perform his own agreements. But if, as in this case, he is unable to perform, or if, as in this case, he elects to treat the contract as wrongfully terminated, the consideration for the advances has failed, either by mutual fault, or by mutual consent; and the money cannot in equity and good conscience be retained, except so far as may be necessary to satisfy a claim for damages for the wrongful termination.

The foregoing covers the ground necessary to the conclusion that the judgment is supported by the facts found, and as there are no assignments of error for rulings made on the trial, further discussion in detail of the alleged errors assigned is not deemed necessary.

There is no error.

In this opinion the other judges concurred.