LUCKENBACH S. S. CO., Inc., v. INSURANCE BLDG. CORPORATION.

No. 2684.

Circuit Court of Appeals, First Circuit.

May 31, 1932.

Charles F. Dutch, of Boston, Mass. (Frederick Fish and Putnam, Bell, Dutch & Santry, all of Boston, Mass., on the brief), for appellant.

Stuart Macmillan, of Boston, Mass. (Philip G. Willard and Barker, Davison & Shattuck, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

**136**

ANDERSON, Circuit Judge.

The plaintiff (appellee) brought suit on a lease of premises in the Insurance building to recover for rent due thereunder, and for light and services rendered. The appellant admitted its liability for rent, light, and services, but pleaded in recoupment and set-off an equal amount of damages for a breach by the plaintiff of a covenant in the lease sued upon.

Jury was duly waived, and the case submitted to the District Court for determination of the legal questions arising on a record in which all essential facts are admitted or undisputed.

In 1925 the appellant was a lessee in the Board of Trade building under a lease expiring June 1, 1927, with a yearly rent of $7,000. During that year, at the solicitation of R. A. Nordblom, a real estate broker and president of the plaintiff corporation, it took a five-year lease, beginning January 1, 1926, of premises in the Insurance Building Corporation's building at 40 Broad street, at a yearly rent of $5,500.

As an inducement to the appellant to make this change of quarters before the expiration of its old lease, the plaintiff agreed to pay thirteen months' rent accruing under the appellant's old lease. This agreement was evidenced by the following covenant:

"The lessor agrees to execute and accept a lease from the Lessee of certain premises now occupied by the Lessee in the Board of Trade Building, Boston, Mass., for a term beginning January 1, 1926, and ending February 1, 1927, at a rental of $7,000 per annum."

Shortly after defendant moved into its new premises, real estate signs bearing the name of Nordblom appeared on the old premises. Defendant moved into its new quarters about January 6, 1926. On January 8 appellant sent to plaintiff its old lease of premises in the Board of Trade building. On January 11, plaintiff returned this lease, requesting the defendant to execute and deliver it a lease of the old quarters. Receiving no reply, plaintiff again wrote, on January 27. On February 2 the defendant replied, inclosing drafts of duplicate leases of its old quarters, and saying:

"Will you please have these signed and returned to this office to be executed?"

To this letter plaintiff made no reply. There was no further communication between the parties until July.

Meantime, plaintiff paid the rent under the appellant's old lease, for the five months, January to May. It failed to pay rent for June and July. Under date of July 9, the defendant's district manager wrote the plaintiff that it had received a letter "under date of July 8th from the Board of Trade Building Trustees advising that you have not paid the rent at our former premises which you took over. They state that you owe them $1,166.68. I understand they have called your attention to this arrear on a number of occasions and are now taking the matter up with us for payment. I trust that you can see your way clear to take care of this matter without delay."

Plaintiff then apparently orally denied obligation to pay this rent. Under date of August 18, 1926, the appellant tendered the plaintiff a sublease of the premises in question, duly executed and assented to by the landlord. This lease was refused as too late. Appellant paid eight months' rent under its old lease, and pleaded this payment, with interest, as set-off.

The undisputed evidence is that at that time there was much empty office space in Boston. In the plaintiff's own building, completed January 1, 1924, there was still vacant space up to the end of 1925. The Atlantic National Bank building came on the market in 1926—a large new building, which took a considerable period of time to fill. The irresistible inference is that the plaintiff had, during the period now material, no use for the sublease in question; that appellant's technical default was, under the then business situation, of no importance whatever. Under existing conditions, the essence of plaintiff's obligation was merely to exonerate the appellant from thirteen months' rent under its old lease; the sublease was an immaterial incident, which plaintiff might have had at any time, as it well knew. This situation was fully recognized by the plaintiff's paying directly to the appellant's old landlord for five months, instead of taking appropriate action under the defendant's tender of subleases on February 2, 1926. It had then paid the January rent on January 12. Its failure to take any action, or even to reply to the plaintiff's letter of February 2, showed clearly that it cared nothing about its technical right to a sublease, and properly so.

At the close of the evidence, the defendant requested the court to rule as follows:

(1) "Since the plaintiff paid the rent due the trustees of the Board of Trade Building under the lease between said trustees and the defendant for the months of January, February, March, April and May in the year 1926, if in reliance on these payments the

defendant failed to tender a lease of these premises to the plaintiff, then the court must find that regardless of any demands the plaintiff may have made for a lease of said premises, the plaintiff waived the failure of the defendant up to the time the last of said payments was made to tender a lease of said premises to the plaintiff, and the defendant was excused from tendering such a lease until a reasonable time after a new demand was made upon it by the plaintiff.

(2) "Since a tender in due form of a lease of the premises in the Board of Trade Building was made by the defendant to the plaintiff on August 18, 1926, then the defendant is entitled to a verdict for the full amount demanded in its declaration in set-off."

The court refused so to rule, but entered judgment for the plaintiff both on the declaration and on the counterclaim, holding that the defendant's technical default in tendering a proper lease of its old premises to the plaintiff barred its claim.

We think this highly technical result reached by the learned District Judge was error; that the defendant's requested rulings should have been given.

As already indicated, the defendant's default in tendering a lease did the plaintiff no real harm. But, of more legal importance, it was obviously waived. The plaintiff could not comply with the substance of its covenant by paying appellant's rent for five months, and then, without notice, successfully assert the defendant's technical default as an effective bar to its important rights under the covenant.

The plaintiff's payment of the January rent on January 12, its failure to take any action in response to the defendant's letter of February 2 tendering for execution subleases, its subsequent payment of rent for four succeeding months, created altogether a new status, changeable only by notice from the plaintiff to the defendant. It gave no such notice.

The case is ruled by such cases as Lilley v. Fifty Associates, 101 Mass. 432; Kaplan v. Flynn, 255 Mass. 127, 150 N. E. 872, 45 A. L. R. 6; Porter v. Harrington, 262 Mass. 203, 159 N. E. 530; Taylor v. Goelet, 208 N. Y. 253, 101 N. E. 867, Ann. Cas. 1914D, 284; Mawhinney v. Millbrook Woolen Mills, 234 N. Y. 244, 137 N. E. 318; Trainor Co. v. Amsinck & Co., Inc., 236 N. Y. 392, 140 N. E. 931, 932. In this case the court said:

"The provision as to the delivery within a reasonable time is a condition. It may be waived, and, if waived, it may not again be imposed without notice."

Compare Simmons v. Swan, 275 U. S. 113, 48 S. Ct. 52, 72 L. Ed. 190; Servel v. Jamieson (C. C. A.) 255 F. 892; Black on Rescission and Cancellation (2d Ed. 1929) § 219, where it is stated as follows:

"Even where time is made the essence of the contract, this provision may be waived by the party for whose benefit or protection it is inserted, either expressly or by extending the time for payment or performance or by granting indulgence to the other party in this regard; and when such a waiver has been made, he cannot arbitrarily and summarily declare a forfeiture of the contract for delay, but must first demand payment or performance and give the other party a reasonable time and opportunity, after such demand, to comply."

A fortiori, when, as in this case, time is not of the essence of the contract, the case falls exactly under the doctrine laid down by the Supreme Judicial Court of Massachusetts in Porter v. Harrington, 262 Mass. 203, 159 N. E. 530, 532: "It would be unconscionable to permit the defendants, in view of their conduct, without notice or warning to insist upon strict performance of the contract and to forfeit all rights of the plaintiff."

The judgment of the District Court is reversed, with costs to the appellant, and the case is remanded to that court for further proceedings not inconsistent with this opinion.