SCHENECTADY STEEL Co., INC., Appellant, v. BRUNO TRIMPOLI GENERAL CONSTRUCTION COMPANY, INC., Respondent, et al., Defendant.

Third Department, January 3, 1974.

*McClung, Peters & Simon* (*Homer E. Peters* of counsel), for appellant.

*Begley & Quinlan* (*William J. Quinlan* of counsel), for respondent.

REYNOLDS, J. This is an appeal from a judgment of the Supreme Court in favor of respondent, entered April 30, 1973 in Schenectady County, upon a decision of the court at a Trial Term, without a jury.

On May 8, 1968, respondent entered into a contract with the State of New York to build, by December 31, 1969, a bridge over the Alplaus Creek in Schenectady County. Respondent, first orally on May 10, 1968 and later by writing, contracted with appellant to have appellant furnish the structural steel necessary for said bridge. The signed contract provided that " time is of the essence " and that the " work will be completed in 1968."

Appellant originally had contemplated that it could obtain the 125-foot steel beams involved in one piece from its supplier, but this proved not to be the case and appellant was required to purchase smaller beams and then splice them together, not an unusual process but one which obviously created the additional problem that all welds would have to pass a radiographic test

before final acceptance. In August, 1968 appellant began its buttwelding but its completed welds could not pass the radiographic tests despite appellant's conceded repeated efforts. Then weather conditions in December forced appellant to suspend its efforts until February, 1969, when it was able to rearrange its facilities to move the welding process indoors. During all of this period respondent was aware of appellant's difficulties and by January of 1969 began to attempt to bring pressure on appellant to complete its obligations. Finally, by letters dated January 29, 1969 and February 11, 1969, respondent insisted that appellant provide it a schedule as to how appellant would complete its obligation, threatening to contract elsewhere for the steel and charge appellant with the additional cost if appellant failed to do so. Appellant responded by letter dated February 12, 1969 that it would proceed "with all possible speed" but that it could not yet provide an accurate completion date. On March 1, 1969 respondent's president visited appellant's shop and apparently was so dissatisfied at what appeared to be the progress, that as of March 5, 1969 respondent canceled the contract with appellant and contracted for the steel elsewhere. Appellant's subsequent letter of March 11, 1969 proposing a definite completion date did not alter respondent's decision.

Appellant then brought the instant proceeding to recover the reasonable value of the services it had provided, and respondent counterclaimed asserting damages for appellant's failure to perform. After a lengthy trial, the trial court dismissed appellant's complaint and gave judgment for respondent in the amount of $8,628.08 on its counterclaim. The instant appeal ensued.

The first issue that must be resolved in this appeal is the correctness of the trial court's assumption that the Uniform Commercial Code applied to the instant contract. It was the trial court's position that it did and that appellant's failure to give adequate assurances following the February 11 letter requesting a completion schedule justified respondent's cancellation of the contract. Of course, at common law no such duty to provide adequate assurances existed (2 Anderson, Uniform Commercial Code [2d ed.], § 2–609:3).

In our opinion the Uniform Commercial Code was not applicable here. The code applies to transactions involving goods, but its provisions, as with its predecessor, the Uniform Sales Act, are not applicable to either "service" or "construction" contracts (1 Anderson, Uniform Commercial Code [2d ed.],

§§ 2–102:5, 2–105:10, 2–105:11; see 1955 Report of N. Y. Law. Rev. Comm., p. 361).

If service predominates and the transfer of title to personal property is an incidental feature of the transaction, the contract does not fall within the ambit of the code, as it did not fall within the ambit of the Sales Act (*Perlmutter* v. *Beth David Hosp.*, 308 N. Y. 100, 104–105; *Ben Constr. Corp.* v. *Ventre*, 23 A D 2d 44). And the contract in the instant case was a contract for the rendition of services, a work, labor and materials contract, rather than a contract for the sale of goods, the steel beams involved. Upon an examination of the contractual terms, appellant was obligated to "furnish and erect the structural steel", and the objective of the parties was, therefore, clearly to secure the erection of the structural steel for the bridge. Respondent was not contracting simply for the steel beams but in essence for their erection and installation with the transfer of the title to the steel a mere incident of the over-all transaction, a mere accessory to the work and labor to be performed (see *Perlmutter* v. *Beth David Hosp., supra*; *Ben Constr. Corp.* v. *Ventre, supra*).

At common law the pivotal issue is the timeliness of appellant's performance. As previously noted, the contract required appellant to complete the work in 1968 and provided that "time is of the essence". Thus, respondent could properly have canceled the contract on December 31, 1968 as appellant had not completed the work by that date (*Taylor* v. *Goelet*, 208 N. Y. 253, 259; *Lawson* v. *Hogan*, 93 N. Y. 39, 44). However, respondent did not so elect, and instead permitted the contract to continue. By this action respondent at that time waived its right to cancel for an untimely performance (*Lawson* v. *Hogan, supra*; see *General Supply & Constr. Co.* v. *Goelet*, 241 N. Y. 28; *Clifton Park Affiliates* v. *Howard*, 36 A D 2d 984; *D'Onfro* v. *State of New York*, 270 App. Div. 9), and effectively converted the contract into one under which performance within a reasonable time was all that was required (*Lawson* v. *Hogan, supra*; see *Mawhinney* v. *Millbrook Woolen Mills*, 234 N. Y. 244), although it retained its right to seek damages for the delay (*General Supply & Constr. Co.* v. *Goelet, supra*; *Mawhinney* v. *Millbrook Woolen Mills, supra*). However, even following this waiver respondent could reimpose time as essential element upon notice to appellant calling for performance within a reasonable time (*Taylor* v. *Goelet, supra*, p. 258; see *General Supply & Constr. Co.* v. *Goelet, supra*; *Clifton Park Affiliates* v. *Howard, supra*) and this we find to have occurred by respond-

ent's letters of January 29 and February 11. These letters restored timeliness and appellant's failure to give more than assurances, after all the previous delays, that it would proceed "with all possible speed" as opposed to the requested definite schedule, plus the state of progress viewed by respondent's president on his March 1 visit, justified respondent's termination of the contract. Accordingly, we agree with the trial court's dismissal of appellant's complaint.

We also agree essentially with the trial court's award of damages to respondent except that since respondent could not, under its contract with the State, have applied bituminous pavement to the bridge prior to May 15 in Schenectady County, the first of the two price increases in the cost of such payment cannot be said to have been the proximate cause of appellant's delayed performance. Accordingly, the amount of respondent's counterclaim should be reduced to $7,378.08, the increased cost of securing the steel work elsewhere plus the amount of the July 2 paving increase.

The judgment should be modified, on the law and the facts, so as to reduce the judgment in favor of respondent to $7,378.08, and, as so modified, affirmed, without costs.

GREENBLOTT, J. (concurring). I concur. I do not disagree with the conclusions arrived at on the basis of common-law principles, but I feel that the trial court was correct in applying the Uniform Commercial Code. I find no clear exemption in that act to "service" or "construction" contracts where the supply of "goods" is an integral aspect of such a contract, and, in any event, there does not appear to be any sound reason for holding the code inapplicable to the "goods" portion of a contract where it is readily separable from the "service" or "construction" portions. Ronald Anderson, in his commentaries on section 2–102 of the code, states: "When the supplier of the services also supplies materials with which to perform the services or consumes materials in the course of rendering the services", it is a mere service contract ungoverned by the code (1 Anderson, Uniform Commercial Code [2d ed.], §§ 2–102:5, 209). In the case at bar, the plaintiff had two distinct obligations: to furnish structural steel according to stated specifications, and to erect such steel. This steel, applying Anderson's test, was not material "with which" a service was performed, nor was it consumed. Rather, it was material upon which services were to be subsequently performed, and the fact that plaintiff rather than another had contracted to perform such services should not relieve him of the obligation to furnish the

" goods " contracted for in compliance with the code. As Anderson himself recognizes, " it is probable that a goods-services transaction will come to be subjected to \* \* \* the Code insofar as the contractor's obligations with respect to the goods themselves are involved, at least where the goods involved could have been purchased in the general market and used by the [customer] " (1 Anderson, *supra*, p. 209).[1] This approach, in my view, aptly describes the situation before us, and it has begun to be recognized as correct by the courts of other States. In *Mercanti* v. *Persson* (160 Conn. 468), the Supreme Court of Connecticut applied the code to a contract to build and install a mast on a yacht. In my view, the obligation to furnish the mast for subsequent installation in *Mercanti* is analogous to the defendant's duty here to furnish structural steel for subsequent erection. Since plaintiff failed to provide adequate assurances of performance within 30 days, as required by section 2–609, the defendant was entitled to repudiate the contract.

I am in agreement with the majority's conclusion reducing the damages awarded on the counterclaim.

COOKE, J. (concurring in part and dissenting in part). I dissent and vote to reverse. I agree with the majority that the Uniform Commercial Code does not apply to a contract such as the instant one where service predominates and the provision of goods is a mere incident (see *Perlmutter* v. *Beth David Hosp.*, 308 N. Y. 100, 104; *Ben Constr. Corp.* v. *Ventre*, 23 A D 2d 44; *Oilheat Systems* v. *Spadaro*, 137 Misc. 384; and see, also, *North American Leisure Corp.* v. *A & B Duplicators, Ltd.*, 468 F. 2d 695 [2d Cir., 1972]; 1 Anderson, Uniform Commercial Code [2d ed.], §§ 2–102:5, 2–105:10; 1955 Report of N. Y. Law Rev. Comm., p. 361). Contrary to the implication of the concurrence, *at the relevant time,* the goods involved here could not have been purchased in the general market, the plaintiff having intended and attempted to do so but failed. Indeed,

---

1. Mr. Justice COOKE suggests that the " goods " could not have been purchased in the general market, and supports this assertion by reference to the plaintiff's failure to do so. This reasoning overlooks the fact that plaintiff was responsible for supplying the goods, and if it was necessary for plaintiff to fabricate the steel out of its component elements, it would then be in no different position than any other manufacturer. Moreover, it does not appear why plaintiff was " unable " to obtain the steel. Perhaps plaintiff was *able* to procure it in its final form, but was unwilling to pay the prevailing market price and therefore chose to manufacture the structural parts. It is worthy of note that plaintiff's successor on the subcontract was capable of procuring the steel in the " general market ".

it is clear from Anderson's commentaries on the code that the section quoted by the concurrence properly applies only to warranties of fitness of readily available consumer goods when such goods are used in commercial service operations, such as beauty parlors (see, e.g., *Newmark* v. *Gimbel's, Inc.*, 54 N. J. 585).[2] The instant contract, requiring plaintiff to "Furnish labor, equipment and materials *to install*" and "*erect* structural steel" (emphasis supplied), was clearly a service or construction contract and thus outside the ambit of the code. Therefore, in determining the rights and remedies of the respective parties, it is necessary to resort to case law.

Time was clearly of the essence in the original contract which expressly so provided and set the work completion date in 1968. However, compliance with that provision was waived by respondent's failure to cancel the contract upon appellant's nonperformance within the time limits (*General Supply & Constr. Co.* v. *Goelet*, 241 N. Y. 28; *Lawson* v. *Hogan*, 93 N. Y. 39; *Clifton Park Affiliates* v. *Howard*, 36 A D 2d 984). Thereupon, the contract was effectively converted into one under which performance within a reasonable time was all that was required (*Lawson* v. *Hogan, supra*) although respondent was free to seek damages attributable to the delay (*Mawhinney* v. *Millbrook Woolen Mills*, 234 N. Y. 244). If performance within a reasonable time was the sole criterion, clearly such time had not expired as of the cancellation date, March 5, 1969. Respondent was aware of the circumstances causing the delay — appellant's inability to obtain State approval of the splice welds in the steel beams — and could reasonably anticipate further delays attributable thereto. However, even if respondent's letters of January 29 and February 11, which called upon appellant to set a completion date, are viewed as reimposing time as an essential element in the contract (see *Brede* v. *Rosedale Terrace Co.*, 216 N. Y. 246, 250; *Taylor* v. *Goelet*, 208 N. Y. 253, 259; *Lawson* v. *Hogan, supra*, p. 44), nevertheless, respondent again waived compliance with that provision by failing to cancel the contract after appellant's refusal, in its letter of February 12, to set a completion date. In fact, work on the project was resumed on February 24 or 25 and the inspection of appellant's premises by the respondent's president on March 1, 1969 indicates that at least as of that date, performance in the absence of a completion date was being permitted.

---

2. To accept the position of the concurrence would subject all normal construction contracts to the code. While this result is not necessarily undesirable, it is one that should be reached through legislative rather than judicial action.

Respondent's cancellation of the contract on March 5, 1969 came about when time was once again not of the essence, and termination, without providing a reasonable time for completion of the contract, was improper (*General Supply & Constr. Co.* v. *Goelet, supra,* pp. 36, 37; *Taylor* v. *Goelet, supra,* p. 259) though, as mentioned earlier, respondent was entitled to seek damages for the delay. Since the cancellation of the contract was wrongful, appellant is also entitled to damages for breach of contract or for the fair and reasonable value of the work performed less the value of the steel retained subject, of course, to respondent's counterclaim.

The record is inadequate for a proper determination of appellant's damages. However, in view of the conclusion we reach, it is clear that the damages awarded respondent were excessive. Accordingly, such damages should be reduced to the sum of $1,950 to reflect only the additional cost of paving *attributable to appellant's delay.*

I would reverse and remit the matter for an assessment of appellant's damages, said damages being subject to a setoff of $1,950 to which respondent is entitled on its counterclaim.

HERLIHY, P. J., and KANE, J., concur with REYNOLDS, J.; GREENBLOTT, J., concurs in a separate opinion; COOKE, J., dissents in part and concurs in part in an opinion.

Judgment modified, on the law and the facts, so as to reduce the judgment in favor of respondent to $7,378.08, and, as so modified, affirmed, without costs.