CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff,

v.

WESTINGHOUSE ELECTRIC CORPORATION, Defendant.

No. 82 Civ. 3504 (MEL).

United States District Court, S.D. New York.

July 12, 1983.

Winthrop, Stimson, Putnam & Roberts, New York City, for plaintiff; Sutton

Keany, David J. Long, Aileen Meyer, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for defendant; Ira M. Millstein, Richard J. Davis, James W. Quinn, Joseph S. Allerhand, New York City, of counsel.

LASKER, District Judge.

On December 3, 1971, Westinghouse Electric Corporation ("Westinghouse") entered into an agreement (the "Agreement") with Consolidated Edison Company of New York, Inc. ("Con Ed") calling for Westinghouse to "furnish and construct a complete and operable nuclear power plant (excluding, however, the nuclear fuel assemblies) built to Westinghouse commercial utility standards and specifications. . . ." (Agreement, Article I) (Def. Ex. A). The facility, since built, is known as the Indian Point Power Plant Unit Number 2 (IP 2 Plant) and is located in Buchanan, New York.[1]

Con Ed's complaint alleges that, following completion of the plant,[2] and beginning in 1975, defects began to appear in various components of the plant that, *inter alia,* have required extensive monitoring, repairs and modifications, have impeded Con Ed's ability to obtain maximum output from the IP 2 Plant, and may in the future require a complete shutdown of the plant for the replacement of defective equipment. The complaint divides the defects into three groups: (1) denting, corrosion and cracking of the tubes and tube support plates contained in the plant's steam generators; (2) cracks in certain turbine rotating components known as discs; and (3) defects in "other equipment," including low pressure turbine blades, the high pressure turbine casing joint, condenser tubes, cross-under piping, and circulating water pumps.

The complaint alleges seven causes of action.[3] The first through sixth allege breach of express warranty and implied warranties of merchantability and fitness for intended purpose (first, second and third causes of action), breach of contract (fourth cause of action), negligence (fifth cause of action), and strict products liability (sixth cause of action). In its seventh cause of action Con Ed seeks a declaration that by virtue of its failure to honor its express warranty obligations Westinghouse has forfeited its right to rely on the limitations and exclusions of damages contained in the Agreement, that Westinghouse must honor its express warranty obligations, and that with respect to the fifth or sixth causes of action Westinghouse is responsible for all damages of any kind that Con Ed may incur as a result of shutting down the plant for repair or replacement of defective equipment.

Westinghouse moves to dismiss various causes of action pursuant to Fed.R.Civ.Pr. 12(b)(6). It argues that (1) all seven causes of action are barred in whole or in substantial part by the applicable New York statutes of limitations;[4] (2) the fifth and sixth causes of action must be dismissed because mere economic loss is not recoverable in negligence and strict liability actions, and because the Agreement's express limitations of liability bar recovery under negligence or strict liability theories; (3) the second and third causes of action for breach of implied warranties are barred by contractual disclaimer; (4) the fourth cause of action, for breach of contract, is merely duplicative of the claims for breach of express and implied warranties; and (5) that portion of the seventh cause of action seek-

---

1. The initial agreement between Con Ed and Westinghouse for the construction of the IP 2 Plant was executed in 1966. The 1966 agreement was expressly merged into the 1971 agreement (Agreement, at p. 2).

2. The Agreement set forth terms for "plant acceptance," defined as the date on which operational testing was complete and the plant had been operated for 100 continuous hours at the warranted rating. The complaint alleges

that plant acceptance occurred on May 22, 1974.

3. Federal jurisdiction is founded upon diversity of citizenship, 28 U.S.C. § 1332; Westinghouse is a Pennsylvania corporation and Con Ed is a New York corporation.

4. The Agreement expressly provides that the rights and obligations of the parties are to be construed in accordance with New York law.

ing a declaration of the ineffectiveness of the disclaimer of consequential damages must be dismissed as contrary to the terms of the Agreement. Westinghouse also moves, in the event the fifth and sixth causes of action are not dismissed, for a more definite statement of those claims pursuant to Fed.R.Civ.Pr. 12(e).

## I. Applicable Statute of Limitations— Counts One through Four (Warranty and Contract Claims)

■ Con Ed and Westinghouse negotiated over the alleged defects in the IP 2 Plant for a period of several years and eventually entered into agreements tolling any statutes of limitations that would otherwise be applicable to Con Ed's potential claims against Westinghouse. A tolling agreement with respect to the steam generators was executed on May 12, 1978, within four years of the accrual of Con Ed's contract causes of action;[5] tolling agreements with respect to the steam turbines and other equipment were executed two years later, on May 16th and May 19, 1980, respectively.

Under New York law, a four-year statute of limitations applies to causes of action based on contracts for the sale of goods, which are governed by the New York Uniform Commercial Code ("N.Y.U.C.C."), while a six-year statute of limitations applies to causes of action based on service or construction contracts, which are governed by the common law. *See* N.Y.U.C.C. § 2–725; New York Civil Practice Law & Rules ("C.P.L.R.") § 213(2). Thus, although Con Ed's contract claims with respect to the steam generators are timely under either measure, the timeliness of its contract claims with respect to the steam turbines and other equipment depends upon whether the IP 2 Agreement is "in essence" a contract for the sale of goods under the N.Y.U.C.C., or whether instead it is a service contract—a "work, labor and materials contract." *Schenectady Steel Co., Inc. v. Bruno Trimpoli General Construction Co.,* 43

A.D.2d 234, 237, 350 N.Y.S.2d 920, 923 (3rd Dep't), *aff'd on other grounds,* 34 N.Y.2d 939, 359 N.Y.S.2d 560, 316 N.E.2d 875 (1974). In deciding whether a contract is one for the sale of goods or for the rendition of services, New York courts look to "the main objective sought to be accomplished by the contracting parties," *Ben Construction Corp. v. Ventre,* 23 A.D.2d 44, 45, 257 N.Y.S.2d 988, 989 (4th Dep't 1965).

Westinghouse argues, in favor of the applicability of the N.Y.U.C.C., that the primary object of the agreement was the purchase by Con Ed of Westinghouse-manufactured and -designed component parts—the steam generators, turbines, and other components of the IP 2 Plant. Indeed, Westinghouse asserts, Con Ed's lawsuit complains of defective equipment, not of the structural soundness of the plant; since Con Ed's claims relate in fact to the goods that Westinghouse sold Con Ed, Con Ed should not be heard to contend that the law governing construction contracts is the applicable law. Westinghouse further contends that the U.C.C. has become the "operative law" applicable to agreements between utilities and suppliers of power plant equipment, even though services are required for construction and installation of the equipment. *E.g., Florida Light & Power Co. v. Westinghouse Electric Corp.,* No. 78–1896, slip op. (S.D.Fla. June 22, 1982) (nuclear steam supply systems); *Ebasco Services, Inc. v. Pa. Power & Light Co.,* 460 F.Supp. 163 (E.D.Pa.1978) (steam turbine generator and boiler feed pump turbines); *American Electric Power Co. v. Westinghouse Electric Corp.,* 418 F.Supp. 435 (S.D. N.Y.1976) (steam turbine generator); *Royal Indemnity Co. v. Westinghouse Electric Corp.,* 385 F.Supp. 520 (S.D.N.Y.1974) (turbine generator).

In answer Con Ed points out that the IP 2 Agreement is a contract not simply for the sale of specific items of power plant equipment, but for the construction of a complete nuclear power plant. The Agree-

---

**5.** For the purposes of this motion Westinghouse accepts, as it must, Con Ed's contention that the contract causes of action accrued on May 22, 1974, the date on which Con Ed alleges that plant acceptance occurred.

ment, Con Ed argues, not only required Westinghouse to provide all architectural and engineering services necessary to the construction of the plant, along with the labor required for its construction, but also provided that Westinghouse would take all necessary steps to assure that the plant would be granted an operating license under the requirements established by the United States Atomic Energy Commission. Con Ed contends that the scope of Westinghouse's responsibilities under the Agreement, which continued throughout several years of design, construction, testing and licensing, differentiates the Agreement from typical "goods" contracts involving the one-time installation of a specific item of equipment. Con Ed also argues that, because "goods" by definition must be "movable at the time of identification to the contract for sale," see N.Y.U.C.C. § 2–105(1), a contract for the furnishing and construction of a nuclear power plant cannot be considered a contract for the sale of goods. Finally, although Con Ed asserts that the IP 2 Agreement is in essence a service contract as a matter of law, it contends, in the alternative, that at most Westinghouse has raised a question of fact as to the nature of the contract that cannot be resolved on the basis of the pleadings.

The New York cases exploring the distinction between sales and services contracts provide no clear answer to the proper classification of the IP 2 Agreement. In several instances New York courts have held that contracts as to which "service predominates and the transfer of title to personal property is an incidental feature of the transaction" are outside the scope of the U.C.C. *Schenectady Steel, supra,* 43 A.D.2d at 237, 350 N.Y.S.2d at 922 (contract to furnish and erect the structural steel for a bridge), *citing Perlmutter v. Beth David Hospital,* 308 N.Y. 100, 104, 123 N.E.2d 792, 794 (1954) (action for strict liability against hospital that supplied impure blood plasma in course of blood transfusion); *see also Ben Construction Corp., supra,* (sale and installation of a swimming pool); *Milau Associates, Inc. v. North Avenue Development Corp.,* 42 N.Y.2d 482, 398 N.Y.S.2d 882, 368 N.E.2d 1247 (1977) (installation of a sprinkler system). In the present case, however, on the record as it stands, neither the goods nor the services aspect of the Agreement can reasonably be characterized as "incidental." Just as Con Ed plainly could not have considered the power generating equipment to be an incidental feature of its contract with Westinghouse, so also the architectural, engineering and testing services provided by Westinghouse, and the labor necessary to carry them out, were crucial to the Agreement's objective.

Moreover, contrary to Westinghouse's rationale, the applicable law cannot be determined simply by looking to the matters about which Con Ed is seeking relief—primarily, defects in various items of equipment supplied by Westinghouse. The New York courts appear to have rejected an approach of applying sales law to the sales aspect of a transaction which combines both sales and service features, requiring instead that the applicable law be determined by looking to the essential nature of the underlying contract. *Compare Schenectady Steel, supra,* 43 A.D.2d at 238, 350 N.Y.S.2d at 924 (concurring opinion of Greenblott, J.) *with Milau Associates, supra,* 42 N.Y.2d at 485, 398 N.Y.S.2d at 884, 368 N.E.2d at 1249.

Where, as here, the question is closely balanced, factual development is necessary before the issue is resolved. *See Back O'Beyond, Inc. v. Telephonic Enterprises, Inc.,* 76 A.D.2d 897, 429 N.Y.S.2d 250 (2d Dep't 1980); *Schulman Investment Co. v. Olin Corp.,* 477 F.Supp. 623 (S.D.N.Y.1979); *cf. Stafford v. International Harvester Co.,* 668 F.2d 142 (2d Cir.1981); *Triangle Underwriters v. Honeywell, Inc.,* 604 F.2d 737 (2d Cir.1979). The pleadings do not reveal the allocation of contract price as between construction and equipment costs, the precise nature and scope of the services undertaken by Westinghouse, or other matters that may contribute to a proper resolution of the question. It may be, as Westinghouse argues, that the "essential" nature of the contract will not be significantly clearer

following development of the record, but the accuracy of this prediction cannot be determined in advance of obtaining the facts.[6]

## II. Fifth Cause of Action—Negligence

In its fifth cause of action Con Ed asserts that Westinghouse breached its duty of due care in the performance of the IP 2 Agreement by (1) negligently furnishing components and operating instructions that were defective and improper, and (2) failing to inform Con Ed promptly of defects that Westinghouse discovered in the course of inspection of the IP 2 Plant, and failing to inform Con Ed of problems that had developed with equipment supplied to other utility customers which was similar to equipment in use at the IP 2 Plant.

Westinghouse moves to dismiss this cause of action on the grounds that (1) New York law precludes the recovery of purely economic loss under a negligence theory; (2) the claim is barred by New York's three-year negligence statute of limitations (C.P. L.R. § 214(4)); (3) the IP 2 Agreement contains disclaimers of liability that preclude discovery of the damages sought by Con Ed pursuant to its negligence claim. Westinghouse moves in the alternative for a more definite statement of Con Ed's negligence claim pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

### A. Availability of Negligence Action for Recovery of Economic Loss

Citing a line of New York cases culminating in the New York Court of Appeals' decision in *Schiavone Construction Co. v. Elgood Mayo Corp.,* 56 N.Y.2d 667, 451 N.Y. S.2d 720, 436 N.E.2d 1322 (1982), Westinghouse argues that because Con Ed seeks damages only for alleged defects in purchased equipment, and does not allege that the defects have caused either personal injury or an accident resulting in property damage, Con Ed has not stated a cause of action in negligence. The New York cases relied upon by Westinghouse are ones in which a remote purchaser, not in privity with the manufacturer, attempted to hold the manufacturer of defective goods liable in negligence and/or strict liability for economic loss caused by the defects—*i.e.,* the cost of repairs, loss of production, the cost of renting replacement equipment, and the like. *See,* in addition to *Schiavone, Hole v. General Motors Corp.,* 83 A.D.2d 715, 442 N.Y.S.2d 638 (3d Dep't 1981); *Steckmar National Realty & Investment Corp. v. JI Case Co.,* 99 Misc.2d 212, 415 N.Y.S.2d 946 (Sup.Ct.N.Y.Co.1979). Westinghouse argues that both the language of Justice Silverman's opinion in *Schiavone,*[7] and his reliance on decisions in other jurisdictions in which recovery under negligence and strict liability theories was denied to a purchaser in privity with the manufacturer, indicate that the rule against discovery of mere

---

**6.** We note that in the cases Westinghouse cites for the proposition that the U.C.C. is the governing law as to disputes between suppliers and purchasers of power plant equipment, *see supra* at p. 361, the issue of the U.C.C.'s applicability was not contested. *See also Niagara Mohawk Power Corp. v. Graver Tank & Manufacturing Co.,* 470 F.Supp. 1308 (N.D.N.Y. 1979) (contract for construction of primary containment steel plate liner for nuclear power plant is contract for services). The U.C.C.'s applicability was also uncontested in *County Asphalt v. Lewis Welding & Engineering Corp.,* 444 F.2d 372 (2d Cir.1971) (sale and erection of two asphalt-producing plants).

We also reject Con Ed's argument that the U.C.C. is inapplicable as a matter of law because the IP 2 Plant is not "movable" within the meaning of N.Y.U.C.C. § 2–105(1). The concept of movability generally has not been

rigidly interpreted. *See, e.g., Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.,* 532 F.2d 572, 580 (7th Cir.1976) (million-gallon water tank is movable good).

**7.** In *Schiavone, supra,* the New York Court of Appeals reversed the Appellate Division's holding that a cause of action in strict liability could be asserted "for the reasons stated in the dissenting opinion of Justice Samuel J. Silverman," reported at 81 A.D.2d 221, 227–34, 439 N.Y.S.2d 933, 937–41 (1st Dep't 1981). It should be noted that Justice Silverman's opinion directly addressed only the question of liability for economic loss under a theory of strict products liability. The trial court's determination that recovery under a negligence theory was unavailable was not appealed. *See* 105 Misc.2d 431, 432 N.Y.S.2d 316 (Sup.Ct.N.Y.Co. 1980).

economic loss under such theories applies equally to lawsuits between purchasers and manufacturers who are in contractual privity. Justice Silverman stated:

"If there is to be so radical an extension of liability as to hold remote manufacturers liable to users, in the absence of representation or contract, for the failure of equipment to function well, it should be the Legislature that makes it .... There is room in the market for goods of varying quality, and if the purchaser buys goods which turn out to be below its expectations, its remedy should be against the person from whom it bought the goods, *based upon the contract with that person.*"

*Schiavone, supra,* 81 A.D.2d at 229, 439 N.Y. S.2d at 938 (emphasis added). In addition, although no New York court has held as yet that merely economic loss cannot be recovered under a negligence theory where the goods were supplied pursuant to a contract between the manufacturer and purchaser, three federal district courts applying New York law have held that recovery for economic loss is not available in such a situation. *See Riversbay Corp. v. Allandale Mutual Ins. Co.,* No. 82–5325, slip op. (S.D.N.Y. 1983); *County of Westchester v. General Motors Corp.,* 555 F.Supp. 290 (S.D.N.Y. 1983); *Price Bros. Co. v. Olin Construction Co., Inc.,* 528 F.Supp. 716 (W.D.N.Y.1981).[8]

In response, Con Ed argues that a cause of action for negligent performance of contractual duties is well-established in New York law, and that the cause of action has often been held available in cases where neither personal injury nor an accident resulting in property damage is alleged. *E.g., Sears, Roebuck & Co. v. Enco Associates, Inc.,* 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977); *Paver & Wildfoerster v. Catholic High School Association,* 38 N.Y.2d 669, 382 N.Y.S.2d 22, 345 N.E.2d 565 (1976);

*Triangle Underwriters v. Honeywell, Inc., supra,* 604 F.2d at 743–44; *Ajax Hardware Manufacturing Corp. v. Industrial Plants Corp.,* 569 F.2d 181, 185 (2d Cir.1977). The cause of action has been described as follows:

"Where a person contracts to do certain work he is charged with the common law duty of exercising reasonable care and skill in the performance of the work required to be done by the contract. It is the breach of the duty imposed by law and not of the contract obligation which constitutes the tort."

*Rosenbaum v. Branster Realty Corp.,* 276 A.D. 167, 168, 93 N.Y.S.2d 209, 211 (1st Dep't 1949). A typical case in which this cause of action is asserted is one in which an architect is sued by a client for negligence in design, construction or choice of materials, *e.g., Sears, Roebuck, supra; Paver & Wildfoerster, supra,* but the cause of action has not been confined to that context. *E.g., Ajax Hardware, supra* (action against appraisers of machinery). Con Ed contends that *Schiavone, supra,* cannot be read to have overruled this line of cases, and that the holding of *Schiavone* and similar cases has no applicability to suits between parties in contractual privity, but is limited to situations in which a remote purchaser sues a manufacturer.

■ We agree with Con Ed that *Schiavone* did not abolish the cause of action recognized in New York for negligent performance of contractual services; the line of cases cited by Con Ed which recognize that cause of action is not even discussed in *Schiavone.* Moreover, a suit for negligent performance of contractual duties is clearly available even where only economic injury is alleged. As stated in *Paver & Wildfoerster,* in the context of discussing the statute of limitations applicable to such claims:

statute of limitations, because the action was one between buyer and seller and alleged "no personal injury, the damages being simply the lower value of the defective goods and the possible liability of the buyer to his customers for breach of warranty." *Id.* at 87 A.D.2d 525, 448 N.Y.S.2d 12.

---

**8.** *See also Springs Mills, Inc. v. Carolina Underwear Co.,* 87 A.D.2d 524, 448 N.Y.S.2d 10 (1st Dep't 1982), in which it was held that in an arbitration action the statute of limitations properly applicable to claims of breach of contract and injuries to property, breaches of warranties, and "tortious conduct" was the N.Y.U. C.C. statute of limitations rather than the tort

"In personal injury cases, it has been said with verbal plausibility that since the 'gravamen' of the action is the misconduct of the defendant, the action sounds 'essentially' in tort. On the other hand, however, when the action is one for pecuniary interests only, where there is a contractual agreement between the parties, the general tendency has been to allow the plaintiff to elect to sue in contract or tort, as he sees fit."

*supra,* 38 N.Y.2d at 675, 382 N.Y.S.2d at 25, 345 N.E.2d at 568.

■ At the same time, we find persuasive Westinghouse's argument that the New York cause of action for negligent performance of contractual duties should not be applied outside the context in which it has been developed—primarily where negligence in the performance of services is alleged. To that extent, we agree with the federal courts that have held, in the context of suits by purchasers against sellers of defective goods, that New York law does not permit recovery, in negligence, of economic loss. *See Riversbay Corp. v. Allandale, supra; County of Westchester v. General Motors, supra; Price Bros. Co. v. Olin Construction, supra.* The reasoning followed in *Schiavone,* and an examination of the cases cited in *Schiavone,* support the conclusion that where a claim is based on defects in a product (rather than on negligent provision of services), the New York courts, if faced with the question, would hold that there is even more reason to bar recovery for economic loss by parties in privity than to bar such recovery in suits by remote purchasers:" [9]

" 'Economic loss results from the failure of the product to perform to the level expected by the buyer and the seller.... Thus, economic loss is almost always incurred by the owner of the product, not by persons who merely use it or come into contact with it. The original purchaser, particularly a large company such as Jones & Laughlin, can protect itself against the risk of unsatisfactory performance by bargaining for a warranty.' "

*Schiavone, supra,* 81 A.D.2d at 232, 439 N.Y.S.2d at 939, citing *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.,* 626 F.2d 280 (3rd Cir.1980).[10]

■ Con Ed's negligence cause of action alleges negligent performance of contractual duties in two distinct respects: (1) the furnishing by Westinghouse of defective steam generators, steam turbines, and other equipment, and of improper operating instructions; (2) the concealment of data showing that problems had developed with the steam generators, which Westinghouse obtained when it inspected the IP 2 Plant, and Westinghouse's failure to warn Con Ed of problems that had developed for other Westinghouse customers in steam turbine components and other equipment similar to that provided to Con Ed. Complaint, ¶ 63. As to Con Ed's claims concerning defective equipment and improper operating instructions, that portion of Con Ed's complaint must be dismissed for the reasons just stated: claims concerning defects in a product which have simply deprived the purchaser

**9.** In *Trans World Airlines Inc. v. Curtiss-Wright Corp.,* 1 Misc.2d 477, 148 N.Y.S.2d 284 (Sup.Ct.N.Y.Co.1955), *aff'd,* 2 A.D.2d 666, 153 N.Y.S.2d 546 (1st Dep't 1956), the court stated that although TWA could not assert a cause of action for defects in airplane engines against the manufacturer, with whom it was not in privity, TWA would have a cause of action either in contract or in tort if it amended its complaint to assert a claim directly against the company from which TWA bought engines. Our reading of *Schiavone* suggests that this holding no longer represents the law of New York. Similarly, although *Triangle Underwrit-*

*ers, supra* stated in passing that the purchaser of data processing equipment could assert a cause of action in negligence against the manufacturer, that case precedes *Schiavone;* at any rate, it was not necessary for the court in *Triangle* to focus on the issue since it held the claim time-barred in any event.

**10.** It should also be noted that *Jones & Laughlin,* which was cited extensively in *Schiavone,* held that neither a negligence nor a strict liability cause of action was available to a purchaser who had suffered only economic loss.

of the benefit of its bargain do not state a cause of action in negligence.[11]

On the other hand, Con Ed's claim that Westinghouse undertook to perform inspections and compile test data with respect to the steam generators, and delayed informing Con Ed of the problems revealed by those data, can fairly be characterized as alleging negligence in the performance of services. In light of New York's well-established recognition of such a cause of action, even where only economic loss is sought to be recovered, we conclude that these allegations state an actionable claim under New York law. *Cf. Ajax Hardware, supra* (claim that firm was negligent in appraising value of machinery states cause of action under New York law).[12]

As to Con Ed's claim that Westinghouse failed to warn Con Ed of known defects in equipment supplied to other customers, the parties' positions are unclear. Westinghouse argues in a footnote that such a contention fails to state a cause of action because there is no duty to warn of nondangerous defects, an argument to which Con Ed has not responded. Accordingly, the motion to dismiss this aspect of the complaint is denied without prejudice to its renewal on fuller briefing by the parties.

## B. Statute of Limitations

Because a portion of Con Ed's negligence claim survives dismissal on the grounds just discussed, it must next be determined whether the claim is barred by New York's three-year tort statute of limitations, C.P.L.R. § 214(4), as Westinghouse asserts.

Con Ed argues, based on the holding in *Sears Roebuck, supra,* that New York's six-year statute of limitations is applicable instead. *Sears* involved an action against architects for negligence in the performance of a contract for the construction of a parking ramp. *Sears* held that, where no claim of personal injury is asserted, application of the contract rather than the tort statute of limitations is justified because the obligations of the defendants, whether characterized as sounding in tort or in contract, arise out of the contractual relationship between the parties: "absent the contract between them, no services would have been performed and thus there would be no claims." *Id.* at 43 N.Y.2d at 396, 401 N.Y.S.2d at 770–71, 372 N.E.2d at 558. Later cases have concluded that the *Sears* rationale is applicable only where the contract is sufficiently formal to justify use of the contract statute of limitations. *Adler & Topal, P.C. v. Exclusive Envelope Corp.,* 84 A.D.2d 365, 446 N.Y.S.2d 337 (2d Dep't 1982).

Westinghouse argues, and one judge of this Court has held, that *Sears* is limited to claims of professional malpractice asserted against architects. *In re Investors Funding Corp. of New York Securities Litigation,* 523 F.Supp. 533, 546 (S.D.N.Y.1980). The holding in cases such as *Adler & Topal, supra,* however, implies that the rule is not so limited. If the holding in *Sears* were restricted to actions against architects, there would have been no occasion for the *Adler* Court to consider whether the contract at issue there (between an accountant and client) was sufficiently formal to permit application of the contract limitations period. *See also Schulman Investment Co.,*

---

**11.** Although an argument can be made that the provision of operating instructions constitutes a service separate from the supplying of the equipment, we find the distinction artificial and conclude that Con Ed's claims concerning operating instructions, insofar as they are based on a negligence theory, are subject to dismissal as part of Con Ed's claims concerning defective equipment.

**12.** Although resolution of this question depends upon a distinction between the goods and services aspect of Con Ed's claims, determination of whether the Agreement is essentially one for

goods or services for purposes of determining the applicable *contract* statute of limitations, *see supra,* Part I, is not dispositive of the extent to which Con Ed's claims are cognizable under a negligence theory. Even if (for example) the contract were eventually found to be essentially a services contract rather than a goods contract, Con Ed still would not be entitled to recover economic loss under a negligence theory except insofar as its claims relate to Westinghouse's provision of services rather than to the supplying of defective equipment.

*supra,* 477 F.Supp. at 630–632 (action against contractor); *State v. Ehasz,* 80 A.D.2d 671, 436 N.Y.S.2d 387 (3rd Dep't 1981) (action against civil engineer) in both of which the *Sears* rule was held applicable. Moreover, in the case at hand there is no question that the contractual relationship between the parties is sufficiently formal to support application of the *Sears* doctrine. Hence, Con Ed's claim for negligent performance of contractual services, insofar as it states a cause of action as discussed in Section II B, *supra,* is timely, because all tolling agreements were executed prior to running of the six-year contract statute of limitations.

However, under the *Sears* rule, if the action is untimely under the three-year tort statute of limitations, but is timely under the six-year contract statute of limitations, "proof on the issue of damages should be limited to that admissable under the law of damages for contract liability." *Sears, supra,* 43 N.Y.2d at 396, 401 N.Y.S.2d at 771, 372 N.E.2d at 558. Having stated this restriction, the *Sears* Court held that its practical effect should not be decided on a motion to dismiss, but should be determined in light of the specific proof offered by the parties. *Id.*[13]

## C. Contractual Disclaimers

Westinghouse makes the additional argument that the recovery of damages which Con Ed seeks under its negligence claim is barred by contractual disclaimer. For the reasons set forth in Part IV, *infra,* we conclude that determination of this issue is premature at present and the motion to dismiss the negligence claim on this ground is therefore denied without prejudice.

## D. Motion for More Definite Statement

Westinghouse has moved, in the event Con Ed's negligence claims are not dismissed, for a more definite statement of the services alleged to have been performed by Westinghouse and the duty alleged to have been breached. Because the negligence claims that clearly relate to non-service aspects of the transaction have been dismissed, and Con Ed's allegations as to Westinghouse's negligence in inspecting the IP 2 Plant's steam generators and failing to reveal the problems that were found are clear, a more definite statement of Con Ed's negligence claim is unnecessary.

## III. Sixth Cause of Action—Strict Products Liability

Westinghouse asserts several grounds in favor of its motion to dismiss Con Ed's strict products liability cause of action. Because it is dispositive, we discuss here only Westinghouse's argument that recovery of economic loss under a theory of strict liability is unavailable. For reasons that, fortunately, are more straightforward than those applicable to Con Ed's negligence cause of action, we conclude that New York law precludes recovery of economic loss under a strict liability theory, regardless of whether the claim asserted relates to goods or to services.

As discussed previously in relation to Con Ed's negligence claim, although *Schiavone, supra,* involved a suit by a remote purchaser, the reasoning of *Schiavone* supports the conclusion that claims of economic loss based on defective products are precluded in the circumstances presented here as well. Moreover, as to strict liability claims, unlike the situation with respect to negligence claims, at least one New York court has squarely held that an action in strict liability between parties in privity is not available to recover economic loss. *De Crosta v. A. Reynolds Construction & Supply Corp.,* 49 A.D.2d 476, 375 N.Y.S.2d 655 (3d Dep't 1975), *aff'd on other grounds,* 41 N.Y.2d 1100, 396 N.Y.S.2d 357, 364 N.E.2d 1129 (1977).

Furthermore, to the extent that Con Ed's claims can be characterized as relating to

---

**13.** Because we are not called upon to decide at present precisely what evidence of damages would be admissible under tort theories but not under contract theories of damages, we need not rule at this time on the availability of the theories relied upon by Con Ed as equitably tolling the tort statute of limitations.

services performed by Westinghouse, New York law clearly precludes assertion of a cause of action in strict liability. *See Milau Associates, supra; Stafford, supra,* 668 F.2d at 146–47.

Accordingly, Westinghouse's motion to dismiss the sixth cause of action is granted.

## IV. Effect of Contractual Disclaimers

The IP 2 Agreement provides an express warranty that the IP 2 Plant, when constructed, would be "free from defects in design, workmanship and materials and shall be suitable for its intended purpose." Agreement, Article III, Section D. In addition, the Agreement contains two provisions setting forth exclusions or limitations of damages. First, the Agreement provides that the exclusive remedy for failure to fulfill the express warranty is correction of defects, by way of repair, replacement or otherwise, which appeared within one year of plant acceptance, and that except as provided under that provision, "Westinghouse shall in no event be liable for damage sustained by Con Edison as a result of the operation of the IP 2 Plant." Agreement, Article III, Sections D & E. Second, the Agreement excludes all varieties of consequential damages. IP 2 Agreement, Article VIII.[14]

Based on these disclaimers, Westinghouse moves to dismiss the second and third causes of action, for breach of implied warranties of merchantability and fitness for intended purpose, and the seventh cause of action, insofar as it seeks a declaratory judgment that the Agreement's consequential damages disclaimer is without force and effect because Westinghouse failed to comply with the express warranty to repair or replace.

Both parties have for the most part addressed the issue of the effectiveness of the contractual disclaimers on the assumption that the N.Y.U.C.C. is the law applicable to the subject. Con Ed argues, *inter alia,* that under § 2–719(2), if Westinghouse has failed to comply with the terms of the express warranty (as the complaint alleges) Con Ed may resort to any other remedies available under the N.Y.U.C.C. Westinghouse argues that case law interpreting the N.Y.U.C.C. establishes that a disclaimer of consequential damages is effective regardless of whether an express warranty has been honored.

If, however, the N.Y.U.C.C. is eventually found to be inapplicable, *see* Part I, *supra,* such arguments would be irrelevant. For example, as Westinghouse points out, if New York common law principles governing service contracts are found applicable, Con Ed clearly cannot maintain an action based on implied warranties, since New York law does not recognize such a cause of action in the context of service contracts. *E.g., Milau Associates, supra.* Because the determination as to whether the instant contract is a contract for services or sale of goods remains open and consequently the applicability of the U.C.C. is still in question at this stage of the litigation, and because the parties have addressed only tangentially, if at all, the effect of common-law principles on these issues, the motion to dismiss the second, third, and seventh causes of action on grounds of contractual disclaimer is denied without prejudice.[15]

14. Article III, Section E of the Agreement states in relevant part:

"Except as provided in Exhibit 3 (Item 6) with respect to the generator inner frame, the foregoing warranties are in lieu of all other warranties, express or implied.... Except as the foregoing warranties apply, Westinghouse and its subcontractors shall in no event be liable for damage sustained by Con Edison as a result of the operation of the IP 2 Plant."

Article VIII of the Agreement states:

"Neither Westinghouse nor its subcontractors or suppliers shall be responsible to Con Edison for loss of use, expenses involving costs of capital, loss of profits or revenues, cost of purchased or replacement power, including additional expenses incurred in using existing power facilities, or any other indirect, special, incidental or consequential loss or damage."

15. Westinghouse has also argued that the contractual disclaimers require dismissal of Con Ed's negligence cause of action, while Con Ed contends that because liability for negligence is not unequivocally excluded by those disclaimers the negligence claim cannot be dismissed.

### V. Breach of Contract—Fourth Cause of Action

Westinghouse has moved to dismiss Con Ed's claim for breach of contract on grounds that it is merely duplicative of the first three causes of action alleging breach of express and implied warranties. Both parties have addressed this contention only in passing, and in any event if the claim is indeed merely duplicative of others its dismissal will have little practical effect. Accordingly, this portion of Westinghouse's motion to dismiss is also denied without prejudice.

\* \* \* \* \* \*

The motion to dismiss the fifth cause of action is granted insofar as it alleges negligence in the provision of defective equipment and improper operating instructions. The motion to dismiss the sixth cause of action for strict liability is granted. To the extent that the fifth and sixth causes of action are dismissed, that portion of the seventh cause of action seeking a declaratory judgment as to Westinghouse's liability under the fifth and sixth causes of action is also dismissed. In all other respects, the motion to dismiss is denied without prejudice.

It is so ordered.

Resolution of this question, too, should be postponed pending a final determination of the legal principles applicable in this case to interpretation of the disclaimers.