■ BAST HATFIELD, INC., Appellant-Respondent, v JOSEPH R. WUNDERLICH, INC., Defendant and Third-Party Plaintiff-Respondent, and JOSEPH R. WUNDERLICH, Respondent. WESTERN SURETY COMPANY, Third-Party Defendant-Appellant-Respondent. (Action No. 1.) GORMAN BROTHERS, INC., Respondent-Appellant, v LATHAM CIRCLE, LLC et al., Defendants, and BAST HATFIELD, INC., et al., Appellants-Respondents, and JOSEPH R. WUNDERLICH, INC., Respondent-Appellant. (Action No. 2.) (And a Related Action.) [910 NYS2d 256]—

Garry, J. (1) Cross appeals (a) from an order of the Supreme Court (Hard, J.), entered April 21, 2009 in Albany County, upon a decision of the court in favor of, among others, defendant Joseph R. Wunderlich, Inc., and (b) from the judgment and amended judgment entered thereon, and (2) appeal from an order of said court, entered August 26, 2009 in Albany County, which denied a motion by Bast Hatfield, Inc. and defendant Western Surety Company to set aside the prior order.

In May 2003, Bast Hatfield, Inc. contracted with defendant Latham Circle, LLC to act as the general contractor for the construction of a Lowe's Home Improvement Center on property owned by Latham Circle in the Town of Colonie, Albany County. Construction was set to begin in April 2003 and to be

substantially complete by October 31, 2003, with liquidated damages assessed against Bast thereafter. However, these dates were expressly conditioned on timely demolition by Latham Circle of several buildings occupying the construction site, including a Caldor's store building. When the contract was signed, the demolition deadlines had already passed, and all of the buildings were still in place. Accordingly, two days before entering into the contract, Bast and Latham Circle executed an agreement (hereinafter the letter agreement) providing that no liquidated damages would be assessed against Bast until the later of 180 days after removal of the Caldor's building or 165 days after completion of all demolition.

In July 2003, Bast executed a subcontract with defendant Joseph R. Wunderlich, Inc. (hereinafter Wunderlich) for site work including, among other things, removal of existing pavement, grading, and installation of storm drainage, sewer piping, and underground utilities. At the time the subcontract was signed, no demolition had yet occurred, and Bast had provided Wunderlich with a copy of the letter agreement tying the project completion dates to demolition of the buildings. The subcontract included a "time is of the essence" clause, providing for the "project" to be substantially complete no later than October 31, 2003, setting a final completion date of November 15, 2003, and further requiring Wunderlich to "coordinate its work so as to be completed by the date indicated on [Bast's] progress schedule in support of the overall completion date."

On August 1, 2003, Bast wrote to Latham Circle noting that the Caldor's building had not been removed and proposing alternate dates for commencement and completion, contingent on completion of demolition by August 15, 2003. Demolition began in August 2003, but on August 15, 2003, Bast again wrote to Latham Circle expressing concern that it was not yet complete. On the same date, Bast and Latham Circle executed a change order altering Wunderlich's scope of work and stating a substantial completion date for the Lowe's project of January 31, 2004. After additional delays, the site demolition was eventually completed in late September 2003.

In addition to the demolition issues, Wunderlich encountered numerous other delays and obstacles after work began in August 2003; the parties disagree as to the reasons for these delays and the degree to which they impeded Wunderlich's progress. On October 17, 2003, Bast sent Wunderlich a 48-hour written notice per the subcontract stating that its work was inadequate in several specified areas and that a failure to provide additional manpower and equipment by October 20, 2003 and to provide

Bast with a plan that would enable paving to begin by November 10, 2003 would result in its termination. Wunderlich's principal, defendant Joseph R. Wunderlich, did not respond in writing, but did advise that his company would get the work done. There was no further correspondence until November 24, 2003, when Bast partially terminated Wunderlich. Thereafter Wunderlich completed the waterline and storm sewer system while Bast and other subcontractors carried out the other site work.

In April 2004, Wunderlich and plaintiff Gorman Brothers, Inc., a sub-subcontractor hired by Wunderlich to carry out certain work called for in the August 2003 change order, filed mechanics' liens against the property; these were subsequently discharged pursuant to undertakings filed by Bast and defendant Western Surety Company under Lien Law § 19 (4). Bast commenced action No. 1 against Wunderlich and its principal seeking, among other things, damages for its alleged default under the subcontract. Wunderlich counterclaimed for damages for wrongful termination and commenced a third-party action against Bast[1] and Western for payment pursuant to its mechanics' lien. Gorman commenced action No. 2 against, among others, Bast, Wunderlich and Western, asserting that it had not been paid for its work under the sub-subcontract and seeking, among other things, to recover against the undertaking. After a lengthy nonjury trial on both actions, Supreme Court determined, among other things, that Bast had wrongfully terminated Wunderlich and that Wunderlich and Gorman were entitled to judgment on their breach of contract claims against Bast and Wunderlich, with damages to be collected against the undertakings.

Bast and Western moved to set aside this order, and Gorman and Wunderlich sought awards of counsel fees and costs. Supreme Court denied all of these applications. Bast and Western appeal from both orders and from the judgment and amended judgment entered upon the first order, and Gorman cross-appeals from the first order and the judgment and amended judgment entered thereon.

Bast contends that the October 31, 2003 substantial completion date in the subcontract was Wunderlich's deadline and, thus, Supreme Court erred in finding that Wunderlich did not default by failing to complete its work by that date. In this regard, Bast claims that the court improperly relied on parol evidence in the form of the letter agreement between Bast and

---

1. As Bast is the plaintiff in this action, *all* claims against it by Wunderlich actually constitute counterclaims, not third-party claims as Wunderlich labeled them.

Latham Circle that tied the project's completion dates to the demolition schedule; in Bast's view, the letter agreement was not part of the subcontract and did not affect Wunderlich's contractual deadline. We find, to the contrary, that the court's interpretation is supported by the unambiguous language of the subcontract, without reference to the letter agreement or other parol evidence.

"A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*Science Applications Intl. Corp. v State of New York*, 60 AD3d 1257, 1258 [2009] [internal quotation marks and brackets omitted]; *see Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). The subcontract provides that "the project" was to be substantially complete by October 31, 2003. The subcontract's title page identified the "[p]roject" as "Lowe's Colonie, NY" and, in accord therewith, the word "project" was used throughout the subcontract to refer to the Lowe's construction as a whole. Wunderlich's separate obligations were consistently referenced by the word "work."[2] Thus, under the plain language of the subcontract, the stated completion date for the "project" governed the construction as a whole and did not specifically pertain to Wunderlich's scope of work. As to the timing of Wunderlich's work, the subcontract's next sentence required it to "coordinate its work to be completed by the date indicated on [Bast's] project schedule supportive of the overall completion date." Additionally, the subcontract required Wunderlich to perform its work in accord with a list of "subcontract documents" that included Bast's "construction schedule" along with the prime contract, the contract specifications and other documents. Thus, rather than stating a specific contractual deadline, the subcontract required Wunderlich to comply with scheduled dates that were not necessarily the same as the overall project completion date and were to be separately established by Bast.

The conclusion that Wunderlich did not default under the subcontract by failing to complete its work by October 31, 2003 is further supported by reference to Bast's schedules. Bast's project manager testified that he prepared a total of three construction schedules for the Lowe's project, two of which were rendered obsolete by the demolition delays before construction began. The third, an "accelerated schedule" dated August 6, 2003, called for substantial completion of the project as a whole on December 2, 2003 and final completion on December

---

2. For example, "All *work* for this *Project* performed by [Wunderlich] shall be processed and handled exclusively by [Bast]" (emphasis added).

31, 2003. This schedule was not updated to accommodate the subsequent demolition delays, nor were further schedules prepared. Supreme Court found that Wunderlich was never provided with this schedule nor notified of the December 2003 completion dates, but did receive notice of the January 31, 2004 substantial completion date specified in the August 2003 change order that altered Wunderlich's scope of work.[3] According the appropriate deference to Supreme Court's credibility determinations (*see e.g. CV Holdings, LLC v Artisan Advisors, LLC*, 40 AD3d 1322, 1323 [2007]), we find no reason to disturb the court's conclusion that Wunderlich's termination was not justified by failure to comply with contractual deadlines.

Supreme Court further found that Wunderlich was unable to complete its work more quickly as its performance was frustrated by obstacles attributable to Bast and Latham Circle and beyond Wunderlich's control (*see Hidden Meadows Dev. Co. v Parmelee's Forest Prods.*, 289 AD2d 642, 644 [2001]; *Young v Whitney*, 111 AD2d 1013, 1014 [1985]; *Farrell Heating, Plumbing, A.C. Contrs. v Facilities Dev. & Improvement Corp.*, 68 AD2d 958, 959 [1979]). This determination was based, in part, on the testimony of Wunderlich's construction expert, who opined that Wunderlich was prevented from progressing more quickly by the delayed demolition, plan revisions required due to an initial error, and the failures of Bast to coordinate the sequencing and staging of the various subcontractors' work, maintain updated schedules, transmit timely submittals to the project engineer, and notify Wunderlich of the accelerated schedule. This expert further opined that Wunderlich would have timely completed its full scope of work under the subcontract had it not been partially terminated. We accord deference to the court's resolution of the conflict between this opinion and the contrary views of Bast's engineer (*see R.W. Granger & Sons v City School Dist. of Albany*, 296 AD2d 636, 636 [2002]).

Credible evidence in the record also supports this determination. The demolition delays significantly impeded Wunderlich's ability to remove existing utilities, grade the site, and install new utilities, and complicated the sequencing of the various

---

**3.** Wunderlich's subcontract was amended pursuant to the change order. No substantial completion date was included in the subcontract amendment, but the corresponding modifications in the prime contract, including the stated substantial completion date, were incorporated into the subcontract pursuant to its general incorporation clause, which had the effect of incorporating into the subcontract prime contract provisions relating to the "scope, quality, character and manner of [a subcontractor's] work" (*Bussanich v 310 E. 55th St. Tenants*, 282 AD2d 243, 244 [2001]).

stages of its work.[4] Additionally, Wunderlich was prevented from accessing its work areas by stored equipment and the activity of other subcontractors, and revisions in the sewer plans—required as a result of an engineering error—were not provided to Wunderlich until mid-October, and these required the removal and relocation of piping previously installed.

Bast was properly held accountable insofar as Wunderlich's performance was impeded by Latham Circle's delays. By entering into a contract that required Wunderlich to comply with a schedule dependent upon Latham Circle's demolition, Bast made an implied promise to Wunderlich that the demolition would be complete in time for Wunderlich to perform under the subcontract (see *Frenchman & Sweet v Philco Discount Corp.*, 21 AD2d 180, 182 [1964]; Restatement [First] of Contracts § 262). We reject Bast's argument that Wunderlich assumed the risk of delay. Wunderlich's contractual acknowledgement that it had inspected the site and assumed responsibility for completion of the work under the existing conditions cannot be construed to include conditions outside its control that did not come into existence until after the subcontract was executed.

The record supports Supreme Court's conclusion that Wunderlich was not barred from asserting a frustration defense by failing to comply with a provision in the subcontract requiring it to give Bast written notice of a claim for additional time or payment within 21 days. Wunderlich did, on at least one occasion, notify Bast in writing that the sewer design revisions would necessitate additional time; Bast did not reply, although Latham Circle eventually approved additional payment. Moreover, since Wunderlich did not have a separate completion date for its subcontracted scope of work and was not aware of a project completion date earlier than January 31, 2004, it had no reason to believe that its work would not be timely completed and, thus, no reason to file a notice of claim (*compare Kingsley Arms, Inc. v Sano Rubin Constr. Co., Inc.* 16 AD3d 813, 814-815 [2005]).[5] More than a month passed between the date when Bast sent the 48-hour notice that, pursuant to the subcontract, was a necessary predicate to cancellation and the date that Bast partially terminated Wunderlich. By Bast's own admission, some

---

4. For example, a building located where Wunderlich was to place a sanitary sewer line was not demolished until mid-September; this delayed the installation of water lines, which could not be installed before the sewer lines because of their respective depth.

5. Notably, in an application for payment Bast made to Latham Circle nine days before the termination, Bast represented that Wunderlich had completed at least 95% of its work in all areas except for the two tasks (water service and stormwater management) as to which it was not terminated.

of the items set forth in the notice were incorrect, while Wunderlich rectified the others, in whole or in part, during the following weeks. Under such conditions, the subcontract provides that the causes of cancellation set forth in the October notice were waived (*compare Schenectady Steel Co. v Trimpoli Gen. Constr. Co.*, 43 AD2d 234, 237 [1974], *affd* 34 NY2d 939 [1974]). By partially terminating Wunderlich without additional notice that its work continued to be inadequate—or indeed, any other communication indicating that Wunderlich's performance was unsatisfactory—Bast's partial termination of Wunderlich breached the subcontract.

Thus, Supreme Court properly concluded that Bast's partial termination of Wunderlich was wrongful and, accordingly, that Bast was not entitled to damages for the expenses it incurred in completing the site work. Moreover, although Bast objects to certain aspects of the court's damage award to Wunderlich for amounts due and owing for completed work and materials provided, we find the award fully supported by credible testimony and evidence in the record and, therefore, we will not disturb it.

Finally, Gorman challenges Supreme Court's denial of its request for counsel fees, contending that such an award is justified because, in response to Gorman's notice to admit, Bast denied that Gorman owed it any indebtedness or retainage. A subcontractor's lien attaches only to funds due and owing to the general contractor at the time of filing or due to become owing thereafter (*see Electric City Concrete Co. v Phillips*, 100 AD2d 1, 4 [1984]), and the trial evidence demonstrated that such amounts were due to Bast at the time of filing. Accordingly, Gorman contends that Bast denied its request to admit without good reason and should be ordered to pay the reasonable counsel fees that Gorman incurred in proving the pertinent facts at trial pursuant to CPLR 3123 (c). However, the notice to admit was directed to amounts "currently" owed to Bast rather than amounts due at the time of filing. As that inquiry was not pertinent to Gorman's evidentiary burden, Supreme Court correctly found that Bast's denial was "of no substantial importance" (CPLR 3123 [c]) and could not be the basis for an award of counsel fees.

Spain, J.P., Lahtinen, Kavanagh and Stein, JJ., concur. Ordered that the orders, judgment and amended judgment are affirmed, without costs.